Argued November 22, affirmed December 9, 1974

BAKER, *Appellant, v.* STATE ACCIDENT INSURANCE FUND (No. 74-2967), *Respondent.*

528 P2d 1070

*Merwin C. Logan,* Springfield, argued the cause for appellant. With him on the brief were Thomas E. Wurtz, Kenneth A. Osher, and Moore, Wurtz & Logan, Springfield.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

PER CURIAM.

Claimant in this workman's compensation case sustained a strain of her back on August 24, 1970, when she slipped while working in a cannery. She contends that she is permanently and totally disabled. We agree with hearing officer Fitzgerald, the Workmen's Compensation Board and the circuit court, all of whom found she was not.

We agree with hearing officer Fitzgerald's opinion and order, which reads:

"* * * * *

"The issue is extent of permanent disability. Claimant was compensably injured on August 24, 1970. The claim was initially closed by Determination Order on February 16, 1971 and claimant was then awarded 48 degrees for unscheduled low back disability and 32 degrees for permanent loss of wage earning capacity. A hearing was requested on the Determination Order and, on March 6, 1972, Hearing Officer John R. McCullough ordered that claimant be paid compensation for permanent and total disability * * *. That Opinion and Order was appealed and, on July 21, 1972, the Workmen's Compensation Board reversed the Hearing Officer and directed the Fund to reopen the claim for further care and treatment as recommended by Dr. Dickel. The claim was reopened and, on April 18, 1973, a Second Determination Order was issued awarding claimant an additional 5% or 16 degrees for unscheduled low back disability. The claimant contends she is permanently and totally disabled.

## "FINDINGS

"(In arriving at the decision in this matter I have, upon the request of the parties, considered not only all of the exhibits and testimony admitted in the record of the instant hearing but also the entire record, exhibits and testimony of the hearing of January 18, 1972 * * *).

"Subsequent to the Board Order it was arranged that claimant be hospitalized at the Medical Center Hospital where Dr. Dickel's office was located. She was received at the hospital on November 27, 1972, and there examined by the doctor who took a history, performed a physical examination, and felt from this that claimant's emotional responses were normal although she had 'a bit of anxiety and a bit of depression present' (Claimant's Exhibit A). At the hospital claimant was treated by psychotherapy, physical therapy, counseling, guidance and a 'general attempt' 'to get this lady up and about and living more comfortably with her physical condition'. Claimant was hospital released on December 8, 1972 * * *. As nearly as the record notes claimant has not been again seen by Dr. Dickel since that date * * *.

"Claimant has continued to treat with Dr. Glaede * * *. She was re-examined by Dr. Degge on March 20, 1973 for claim closure. This doctor's conclusion reads:

"'RECOMMENDATIONS AND CONCLUSIONS: This patient has a moderate increase in the normal dorsal kyphosis due to progression of her arthritis and spondylosis through the mid-dorsal area with increased limitation of motion throughout the dorsal spine. As before, there appears to be a moderate amount of psychosomatic overlay. I would concur that her condition is essentially stationary. She should continue to wear her back support, dorso-lumbar Camp type, series H2'. * * *.

"Claimant is now 60 years of age. She had an

eighth grade education in Arkansas and no special training or skills. All of her work experience involved jobs of physical labor. She is currently receiving social security benefits and has not worked since the industrial injury. She continues to wear her back brace. Current complaints involve her back. She complains of a sharp pain in her back when she uses her right arm and a dull pain all of the time. She claims an inability to stand over 30 minutes and that sitting for any length of time brings on muscle spasms. She states she is unable to lift or bend. She still states that she has trouble with her legs.

"Mr. Alan Bennett has been a rehabilitation counselor for the Vocational Rehabilitation Division since July 1957. He interviewed claimant on one occasion in late 1971. He feels claimant is not employable, basing this conclusion on claimant's medical condition, lack of education and work skills, age level, and inability to be trained.

*"OPINION*

"By a Determination Order of February 16, 1971, this claimant was awarded a total of 80 degrees for unscheduled low back disability * * * and by the Determination Order of April 18, 1973, she was awarded an additional 16 degrees, for a grand total of 96 degrees. In my opinion claimant has been fully compensated for any loss of wage earning capacity she suffered as a result of the industrial injury of August 25, 1970. In reaching this result I am well aware that in March 1972 claimant was found to be then permanently and totally disabled by a fellow Referee. With all due respect for Mr. McCullough's opinion I reach an opposite result. I reach this result also despite my personal belief that this claimant probably will never re-enter the labor market. Claimant may very well be, for all intents and purposes, permanently and totally disabled from future gainful employment. I find, however, that this disability *does not result from the industrial injury of August 1970.* Nor do I find

that the industrial injury aggravated any pre-existing problem (medical or psychological) to such an extent that claimant qualifies as permanent and total under ORS 656.206. And I do not find any such pre-existing disability which, included with the residuals of the August 1970 accident, would necessitate that result.

"Considerable reliance was placed upon a December 6, 1971 report by Dr. Glaede in reaching the previous result of permanent and total disability. I have reviewed that report and agree as to its unequivocating nature. I, however, have the advantage over the other Referee in that I have heard and observed this doctor testify. His report might be unequivocal, his testimony is not. We have a new report from Dr. Glaede of June 25, 1973 * * *. In that report the doctor is very unequivocal in stating claimant is totally disabled and will not improve. However, we also have a report from that doctor of January 1973 * * * in which he answers the question of permanent impairment from the injury rather less unequivocally by checking the 'Undetermined' box. The doctor also states in that earlier report that claimant 'does not have much incentive to return to work'. In his testimony Dr. Glaede was not aware of the extent of claimant's gout and rheumatism nor did he know the reason for claimant's arm pain. Granted medical opinions differ and medical science does not even pretend to exactness. These and other portions of this doctor's testimony, however, convince me that he is somewhat more equivocating than would appear from a simple reading of his medical reports.

"The tenor of the testimony by Alan Bennett, Vocational Rehabilitation counselor, is that claimant is permanently and totally disabled. I find, however, in reviewing his testimony and reports that he interviewed the claimant only once, late in 1971. I find also that Mr. Bennett does not question a client's motivation but 'presumes motivation' by the mere fact that an appearance is made in Mr.

Bennett's office. Other than that he is unable to recall anything specifically about the motivation factor in this case. I feel that motivation has been a key problem in this case by the various medical opinions. Mr. Bennett also states he accepts physical complaints of pain at face value although he states he reviews medical reports and does not ignore doctors' statements regarding possible lack of severity of the pain. Mr. Bennett appears very serious about his job and extremely sincere in his testimony. I feel, however, that the problem is somewhat more involved.

"I place greater reliance on some other medical exhibits in the record than I do on those of Dr. Glaede. Thus, I note Dr. Parvaresh, in February 1972, felt claimant had 'a chronic psychoneurotic disorder of lifelong duration'. He further found 'very little conceivable causal relationship between her accident and her present psychophysiological musculoskeletal complaints'. That doctor hinted furthermore at a secondary gain factor * * *.

"I note that Psychologist Perkins found a lack of motivation, 'no interest in returning to work and no vocational interest areas'. To this expert claimant gave 'the impression of having accepted retirement for herself' * * *.

"To Dr. Brooksby claimant was not malingering and he seemed to feel she had a true 'hysterical reaction of a conversion type'. However, even this psychiatrist felt the psychological problems developed only 'partially out of her alleged injury' * * *. And he subsequently stated that claimant had 'shown evidence of emotional instability prior to' the industrial injury * * *.

"Dr. Johnston felt, in 1971, claimant had 'really no abnormalities or limitations in her back'. He felt most of claimant's symptoms were 'grossly exaggerated' and that her 'hysterical personality disorder' was 'long standing' * * *.

"Dr. Degge's reports do not seem to indicate that

he feels claimant is totally disabled as a result of the industrial injury. In March of this year he talks about 'progression of her arthritis and spondylosis' and a 'moderate amount of psychosomatic overlay' which he does not attempt to relate to the injury in question * * *. And, as long ago as April 2, 1971, Dr. Degge felt claimant 'could probably return to nearly full activity with no restrictions' * * *.

"Basically then, I am of the opinion that the psychosomatic problem (which seems to be considered more serious here than the physical problem) has not been shown to be related to any great extent to the industrial injury. Nor has it been shown that this problem has been materially aggravated by the industrial injury. The physical residuals are not such that claimant should be totally disabled when her treating doctor said, within nine months of the accident, that 'she could probably return to nearly full activity with no restrictions'. Claimant has, as stated by Dr. Perkins, 'accepted retirement for herself'. And well she might. I do not find, however, that this is the responsibility of this defendant.

"* * * * * *."

Affirmed.